WMP
F. #2013R01203

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SECURITIES AND EXCHANGE COMMISSION,

       Plaintiff,

 - against -

ABRAXAS J. DISCALA,
MARC E. WEXLER,
MATTHEW A. BELL,
CRAIG L. JOSEPHBERG, and
IRA SHAPIRO,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

14 CV 4346 (ENV)

GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF
APPLICATION TO INTERVENE AND TO STAY CIVIL PROCEEDINGS

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

WINSTON M. PAES
Assistant U.S. Attorney
(Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motion to intervene in the above-captioned civil case (the "Civil Case") and to stay civil proceedings because of the pendency of the parallel criminal case, United States v. ABRAXAS J. DISCALA, MARC WEXLER, IRA SHAPIRO, MATTHEW BELL, CRAIG JOSEPHBERG, KYLEEN CANE and VICTOR AZRAK, 14 CR 399 (ENV) (the "Criminal Case"), which has been filed in this district, and a related, ongoing grand jury investigation. The same underlying facts are at issue in both the civil and the criminal matters. All of the defendants in the Civil Case have informed the government that they consent to the entry of the requested order staying proceedings of the Civil Case. In addition, the government has consulted with the U.S. Securities and Exchange Commission ("SEC"), which does not oppose the entry of the requested order.

A stay of proceedings is necessary in the Civil Case to preserve the secrecy of the ongoing grand jury proceedings. Additionally, it is necessary to prevent the broad civil discovery from circumventing the more limited discovery that will be available to the defendants who have all been indicted in the Criminal Case. Moreover, a stay of the civil proceedings herein could promote judicial economy since each of the defendants in the Civil Case has also been charged in the Criminal Case. Accordingly, the United States respectfully requests that the Court: (1) permit the government to intervene pursuant to Federal Rule of Civil Procedure 24 and (2) order, pursuant to the Court's inherent power, that civil proceedings in the Civil Case be stayed until the conclusion of the related Criminal Case and the ongoing grand jury investigation.

FACTUAL BACKGROUND

I. Overview of the SEC's Allegations

In a complaint filed on July 17, 2014 (the "SEC Complaint"), the SEC alleges that, in or about and between 2013 and 2014, the defendants Abraxas J. Discala, Marc E. Wexler, Matthew A. Bell, Craig L. Josephberg and Ira Shapiro (the "Civil Defendants") engaged in a scheme to manipulate the securities of three publicly traded companies, namely, CodeSmart Holdings, Inc. ("CodeSmart"), The Staffing Group, Ltd. ("Staffing Group") and Cubed, Inc. ("Cubed"). Specifically, the SEC alleges, inter alia, that Discala and his associates, including Wexler, Bell and Josephberg, obtained control of 3 million purportedly unrestricted shares of CodeSmart and flooded the market by purchasing CodeSmart shares in Bell's advisory clients' and Josephberg's brokerage customers' accounts, without proper disclosures. Indeed, at the same time that Bell and Josephberg were purchasing CodeSmart's stock in their clients' and customers' accounts, Bell and Josephberg were dumping their personal CodeSmart shares on the market. Shapiro, who served as CodeSmart's CEO, participated in the manipulative scheme by issuing materially misleading statements in press releases on at least three occasions in order to increase the price and volume of the stock. With respect to Staffing Group and Cubed, the SEC alleges that, in 2014, Discala, Wexler, Bell and others conspired to manipulate the securities of Staffing Group and Cubed by coordinating their trading in the securities of these companies in order to create a false impression of market activity.

II. Overview of the Criminal Case

On July 14, 2014, a federal grand jury sitting in the Eastern District of New York returned an indictment charging the Civil Defendants, as well as two others, with, inter alia, the same conduct alleged in the SEC Complaint. Specifically, the indictment alleges that on or about

and between October 2012 and July 2014, the Civil Defendants, together with others, agreed to defraud investors and potential investors in CodeSmart, Cubed, StarStream Entertainment Inc. ("StarStream") and Staffing Group (collectively, the "Manipulated Public Companies") by artificially controlling the price and volume of traded shares in the Manipulated Public Companies through, inter alia: (a) false and misleading press releases; (b) false and misleading SEC filings; (c) fraudulent concealment of the defendants' and their co-conspirators' ownership interests; (d) engineering price movements and trading volume in the stocks; and (e) unauthorized purchases of stock in accounts of unwitting investors.

Similar to the SEC Complaint, the indictment alleges that defendants Discala, Wexler, Bell and Josephberg, together with others, gained control of CodeSmart's unrestricted shares and engaged in a scheme whereby they fraudulently inflated CodeSmart's share price and trading volume and then sold the unrestricted CodeSmart stock at a profit when the share price reached desirable levels.  The indictment further alleges that defendant Shapiro coordinated the issuance of company press releases, a number of which contained false and misleading information, with defendant Discala and his associates, in an effort to generate market interest in the stock.  Similar to the SEC Complaint, the indictment also alleges that the Civil Defendants engaged in a scheme to manipulate the stock of Staffing Group and Cubed through, inter alia, coordinated trading in the securities of these companies in order to create a false impression of market activity.

ARGUMENT

POINT ONE

INTERVENTION IS APPROPRIATE

I.      Applicable Law

Rule 24 of the Federal Rules of Civil Procedure provides that a party may intervene in a civil action either as a matter of right or on a permissive basis. Either avenue justifies intervention by the United States in the present action. See In re Air Cargo Shipping Servs. Antitrust Litig., M.D.L. No. 1775, 06-MD-1775, 2010 U.S. Dist. LEXIS 128950, at *58, 62-63 (E.D.N.Y. Dec. 3, 2010) (granting motion, noting that "[w]hether as of right under Rule 24(a) or by permission under Rule 24(b), courts in the Second Circuit have routinely granted motions made by prosecuting authorities seeking to intervene in civil actions for the purpose of obtaining stays of discovery").

Federal Rule of Civil Procedure 24(a) provides that a person may intervene as of right when the applicant:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). Intervention is appropriate under Federal Rule of Civil Procedure 24(a) if the application is timely, the party has an interest in the transaction, the action may impede the party's ability to protect that interest, and the party's interests are not adequately represented in the action. See Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d 377, 389 (2d Cir. 2006); Cascade Natural Gas Co. v. El Paso Natural Gas Co., 386 U.S. 129, 132-36 (1967) (permitting

4

State of California to intervene under Rule 24(a) in antitrust case to protect state's "interest" in promoting competition in California).

Additionally, a court may permit intervention when an applicant files a timely motion and has a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). Intervention under Federal Rule of Civil Procedure 24(b) is "wholly discretionary with the trial court." United States Postal Service v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978). In exercising their discretion, courts consider the nature and extent of the intervener's interests, whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties, and whether the interests of the proposed intervener are adequately represented by the existing parties. See Berroyer v. United States, 282 F.R.D. 299, 302-03 (E.D.N.Y. 2012); Miller v. Silbermann, 832 F. Supp. 663, 673-74 (S.D.N.Y. 1993).

II.     Discussion

Allowing the United States to intervene in this case under Rule 24 is appropriate. The United States' motion is timely, as it is being filed before any discovery has taken place in the Civil Case. Additionally, no party has suffered prejudice and the Civil Defendants consent to the filing of this motion. Moreover, as demonstrated above, the same alleged fraudulent scheme and transactions are at issue in both the Civil Case and the Criminal Case.

When government prosecutors have advised courts that they are conducting criminal prosecutions or investigations of individuals involved in a pending civil action, the courts have regularly permitted the government to intervene to request a stay of proceedings or discovery in the ongoing civil cases. See, e.g., SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988) (permitting government intervention to seek stay of civil discovery in SEC action pending completion of a criminal investigation involving the same underlying facts was not an abuse of discretion under

5

either Rule 24(a) or Rule 24(b)); see also SEC v. Doody, 186 F. Supp. 2d 379, 381 (S.D.N.Y. 2002); Bridgeport Harbour Place I, LLC v. Ganim, 269 F. Supp. 2d 6, 8 (D. Conn. 2002); SEC v. Downe, No. 92 Civ. 4092 (PKL), 1993 WL 22126 at *11 (S.D.N.Y. Jan. 26, 1993); Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992).

Intervention is warranted as a matter of right under Rule 24(a)(2) in light of the strong interest of the government and the public in the enforcement of criminal laws. See, e.g., Cascade Natural Gas Co., 386 U.S. at 132-36 (permitting intervention as of right by State in antitrust proceedings because of public interest in effective competition); SEC v. Realty & Improvement Co., 310 U.S. 434, 458-60 (1940) (SEC should have been permitted to intervene in bankruptcy proceeding because resolution of that proceeding might "defeat the public interests which [the SEC] was designated to represent"). That interest may be substantially impaired if civil proceedings were allowed to continue in this matter before the resolution of the Criminal Case, as explained further in Point II below.

Courts have specifically recognized that the government "has a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter." Chestman, 861 F.2d at 50; see Morris v. Am. Fed'n of State, County & Mun. Employees, No. 99 Civ. 5125 (SWK), 2001 WL 123886 at *1 (S.D.N.Y. Feb. 9, 2001) (permitting the District Attorney to intervene in civil action to request stay of discovery); Bd. of Governors of the Fed. Reserve Sys. v. Pharaon, 140 F.R.D. 634, 638 (S.D.N.Y. 1991) (same); First Merchs. Enter., Inc. v. Shannon, No. 88 Civ. 8254 (CSH), 1989 WL 25214 at *2-*3 (S.D.N.Y. Mar. 16, 1989) (allowing the United States Attorney to intervene in a civil action).

6

Intervention is also warranted as an exercise of this Court's discretionary authority because the Civil Defendants are charged with engaging in essentially the same scheme in the Criminal Case. Indeed, there is substantial overlap in the core factual allegations underlying this action and the factual questions that likely will be resolved in the Criminal Case – namely, whether the defendants charged in both the Civil and Criminal Cases schemed to violate the securities laws and defraud the investing public. The United States seeks only a stay of the proceedings, and its intervention will not alter the parties' respective positions. In fact, the criminal prosecutions may benefit the civil parties, by bringing out facts relevant to the Civil Case and streamlining the ensuing litigation. Accordingly, this Court should permit the government to intervene.

## POINT TWO

## STAY OF CIVIL PROCEEDINGS SHOULD BE GRANTED

I.    Applicable Law

District courts have the inherent authority to stay their own civil proceedings. See Landis v. N. Am. Co., 299 U.S. 248 (1936). A stay of proceedings and discovery in a civil case is particularly appropriate when, as here, a criminal indictment has been filed. See Doody, 186 F. Supp. 2d at 381 ("Once an indictment has been returned, the government often moves for and frequently obtains relief preventing a criminal defendant from using parallel civil proceedings to gain premature access to evidence and information pertinent to the Criminal Case."); Twenty First Century Corp., 801 F. Supp. at 1011 ("[C]ourts are more likely to grant [a stay] when an indictment has already been issued."). Pursuant to this discretionary authority, courts may decide to stay civil proceedings, postpone civil discovery, or impose protective orders. See SEC v. Dressler, 628 F.2d 1368, 1375 (D.C. Cir. 1980).

In making the determination whether to exercise its discretion to stay the civil proceedings, the Court should balance the following considerations:

> (1) the private interest of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendant; (3) the convenience to the courts; (4) the interest of persons not parties to the civil litigation; and (5) the public interest.

Twenty First Century Corp., 801 F. Supp. at 1010 (citations and quotations omitted). As described below, each of these factors weighs in favor of granting a stay of civil proceedings in the Civil Case until the conclusion of the criminal prosecutions.

8

II. Discussion

    A. The Civil Parties Will Not Be Prejudiced by the Proposed Stay

Each of the Civil Defendants consents to the entry of a stay of civil proceedings in the Civil Case, and the SEC does not oppose the filing of the requested order. This is not surprising, given the significant resources that the parties stand to save by allowing the Criminal Case to proceed unencumbered by the burdens of civil proceedings and discovery. As described above, each of the Civil Defendants has been charged in the Criminal Case. If these defendants are convicted, they will in all likelihood not proceed to trial in the Civil Case. See SEC v. Freeman, 290 F. Supp. 2d 401, 405 (S.D.N.Y. 2003) ("It is settled that a party in a civil case may be precluded from relitigating issues adjudicated in a prior criminal proceeding and that the Government may rely on the collateral estoppel effect of the conviction in support of establishing the defendant's liability in the subsequent civil action").

The Civil Defendants who have been charged in the Criminal Case are also likely to choose to assert their Fifth Amendment rights against self-incrimination in the Civil Case. Such an assertion would permit the Court in this civil action to make an adverse inference against them, a circumstance surely against their interests. Similarly, it would be unfair to permit them to obtain discovery while not requiring that they provide the same. A stay would also be likely to streamline discovery for the SEC and any defendants who remain in the Civil Case after the conclusion of the criminal proceedings. See Twenty First Century Corp., 801 F. Supp. at 1011 (Noting that civil discovery due to pending criminal action "may streamline later civil discovery since the transcripts from the criminal case will be available to the civil parties."). The SEC and the Civil Defendants will therefore benefit from, as opposed to be prejudiced by, a stay of proceedings and discovery in the Civil Case.

9

### B. The Court Will Not Be Inconvenienced If It Stays Proceedings in the Civil Case

The Court will not be inconvenienced as a result of the stay. To the contrary, as stated above, should the Criminal Case result in convictions, it could greatly streamline the Civil Case. A stay of civil proceedings is also likely to narrow or eliminate factual issues in the civil litigation. See, e.g., In re Grand Jury Proceedings, 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("Although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues."); United States v. Mellon Bank, 545 F.2d 869, 873 (3rd Cir. 1976) (affirming a stay of discovery and stating: "[I]t might well have been that resolution of the criminal case would moot, clarify, or otherwise affect various contentions in the civil case."); Brock v. Tolkow, 109 F.R.D. 116, 119-20 (E.D.N.Y. 1985) (in granting a stay, noting that "the resolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues."). All of this will save the Court's time and resources when the civil proceedings stay is lifted at the conclusion of the Criminal Case.

### C. A Stay Will Prevent Unfair Prejudice to the Government

A stay of the civil proceedings is appropriate to prevent criminal defendants from taking unfair advantage of broad civil discovery rules, to the detriment of the government and its witnesses. The Second Circuit Court of Appeals has recognized that the government has "a discernible interest in intervening in order to prevent discovery in [a] civil case from being used to circumvent the more limited scope of discovery [available] in [a] criminal matter." Chestman, 861 F.2d at 50. The vastly different rules that apply to discovery in civil and criminal cases are important reasons for staying civil proceedings and discovery in cases where there are parallel criminal proceedings. See Bridgeport Harbour Place I, LLC, 269 F. Supp. 2d at 10 ("Courts are very concerned about the differences in discovery afforded to parties in a civil case and those of a

defendant in a criminal case."); Twenty First Century Corp., 801 F. Supp. at 1010 (granting stay, in part, because "[a]llowing civil discovery to proceed . . . may afford defendants an opportunity to gain evidence to which they are not entitled under the governing criminal discovery rules"). Unlike in a civil case, criminal defendants ordinarily are not entitled to depose prosecution witnesses, much less engage in the type of far-ranging inquiry permitted by the civil rules. See, e.g., Fed. R. Crim. Proc. 15(a). Nor are they able to obtain documents reflecting prior statements of witnesses before trial. See 18 U.S.C. § 3500; Fed. R. Crim. Proc. 16(a). Likewise, the criminal discovery rules require production only of those documents which the government intends to offer at trial, or which are material to the defense. See Fed. R. Crim. Proc. 16(a)(1)(C).

Discovery in criminal cases is narrowly circumscribed for important reasons entirely independent of any generalized policy of restricting the flow of information to defendants. Three major reasons regularly identified by the courts in justifying narrow criminal discovery are that: (1) the broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence; (2) the revelation of the identity of prospective witnesses may create the opportunity for intimidation; and (3) the criminal defendants may unfairly surprise the prosecution at trial with information developed through discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants. Nakash v. U.S. Dep't of Justice, 708 F. Supp. 1354, 1366 (S.D.N.Y. 1988); see also Campbell v. Eastland, 307 F.2d 478, 487 n.12 (5th Cir. 1962); Raphael v. Aetna Cas. & Sur., 744 F. Supp. 71, 75 (S.D.N.Y. 1990).

These dangers are especially acute here because some potential witnesses in the Civil Case, as well as the related Criminal Case, have pled guilty to criminal charges and entered into cooperation agreements with the government. Moreover, the identities of the cooperating

11

witnesses are not a matter of public record. Allowing discovery to proceed in the Civil Case could result in the premature disclosure of the identities of these cooperating witnesses. The cooperating witnesses also retain their Fifth Amendment privilege against self-incrimination.[1] It would be unfair to the government to permit a party to the civil litigation to manufacture impeachment material by allowing civil depositions to be conducted when government witnesses may be forced to assert their Fifth Amendment rights.

Discovery of the notes of interviews of government witnesses, or the taking of such witnesses' depositions, would also undoubtedly provide information not discoverable in the criminal prosecution, and shed light on the strategies and progress of the ongoing grand jury investigation as well as any resulting prosecution, thus enhancing the ability to manufacture evidence or tailor testimony, and otherwise severely hamper the government's ability to conduct an orderly investigation and prosecution. The requested stay, on the other hand, would for the most part eliminate the possibility that such dangers will be realized.

    D.    <u>A Stay Would Serve the Public Interest in Law Enforcement</u>

It is well-settled that "a trial judge should give substantial weight to [the public interest in law enforcement] in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities." <u>Campbell</u>, 307 F.2d at 487; <u>see also</u> <u>In re Ivan F. Boesky Sec. Litig.</u>, 128 F.R.D. 47, 48 (S.D.N.Y. 1989). Indeed, one court has observed that "where both civil and criminal proceedings arise out of the same or related transactions, the government is ordinarily entitled to a stay of all discovery in the civil action until

---

[1] See <u>Mitchell v. United States</u>, 526 U.S. 314, 323-24 (1999) (even defendants who have pled guilty retain Fifth Amendment rights prior to sentencing); <u>SEC v. Malden</u>, No. 89 Civ. 0572 (JFK), 1991 WL 270116 at *3-*4 (S.D.N.Y. Dec. 9, 1991) (noting that a cooperating individual faces the possibility of criminal charges from other law enforcement authorities and for other criminal activity related to his cooperation).

disposition of the criminal matter." United States v. One 1964 Cadillac Coupe DeVille, 41 F.R.D. 352, 353 (S.D.N.Y. 1966).

Stays of proceedings and discovery in civil actions reflect a recognition of the vital interests at stake in a criminal prosecution. See, e.g., United States v. Kordel, 397 U.S. 1, 12 n.27 (1970) ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution"). Stays have been granted to halt civil litigation that threatened to impede criminal investigations which had yet to yield an indictment. For example, stays have been granted to avoid interference in investigations relating to tax fraud, see, e.g., Campbell, 307 F.2d at 480, insider trading, see, e.g., Chestman, 861 F.2d at 50; Downe, 1993 WL 22126 at *1, insurance fraud, see, e.g., Raphael, 744 F. Supp. at 73, bank fraud, see, e.g., Pharaon, 140 F.R.D. at 639, customs violations, see, e.g., R.J.F. Fabrics, Inc. v. United States, 651 F. Supp. 1437 (U.S. Ct. Int'l Trade 1986), and immigration fraud, see, e.g., Souza v. Shiltgen, No. C-95-3997 MHP, 1996 WL 241824 at *1 (N.D. Cal. May 6, 1986).

A stay is especially appropriate here because there is an indictment filed against each of the five individual defendants in the Civil Case for engaging in the same activities that are the subject of that lawsuit. The prosecution in this case will therefore vindicate substantially the same public interest underlying the SEC's civil action, namely preventing corporate securities fraud. See, e.g., Volmar Distrib., Inc. v. N.Y. Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (criminal prosecution would serve to advance public interest in preserving integrity of competitive markets). In sum, the interests of the public, the government, the parties, and the Court strongly weigh in favor of granting this stay motion. In the interests of permitting the government to complete its prosecution in the Criminal Case, as well as the ongoing criminal investigation, the

13

government respectfully requests that its motion for a stay of civil proceedings in the Civil Case be granted.

## CONCLUSION

For the foregoing reasons, the government's motion to intervene and for a stay of proceedings in this civil action should be granted.

Dated: Brooklyn, New York
October 14, 2014

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney
Eastern District of New York


_____/s/_____
Winston M. Paes
Assistant U.S. Attorney
(718) 254-6023

Cc: Clerk of the Court (ENV)
Defense Counsel (By ECF)